CARAWAY, J.
11 This dispute involves a conflict between a corporation which owns and maintains a historic cemetery and the relative of family members buried in the cemetery. The corporation took action to require the plaintiff to remove certain structures from his family’s gravesite, and he sued to enjoin such removal. The trial court ruled in favor of the corporation’s action and this appeal followed. Finding the corporation’s actions authorized under Title 8 of the Revised Statutes, we affirm.

Facts

On August 15, 2005, appellant Fred L. Houston (“Houston”) sued Springville Cemetery Association, Inc. (“SCA”) to enjoin it from removing structural items he placed around his wife’s grave in 2002, and from relocating a water hydrant which he utilized for the grave site. It was undisputed that Houston received verbal permission from a SCA board member before placing an arbor and canopy-like structure on the grave in 2002. Nevertheless, in July 2005, the SCA’s board, citing complaints, directed Houston to remove the *906 structure because “it is best for the cemetery that you not be permitted to continue to have your tent erected in the cemetery.” The same letter notified Houston that the water hydrant was to be relocated.
The SCA’s second letter dated August 2, 2005, was sent to Houston by certified mail and warned him that “unless your tent and appurtenance are removed ... on or before August 15, 2005,” the SCA would “cause it to be removed.” Houston obtained a temporary restraining order enjoining the |2board from acting on August 15, 2005. The day before the hearing was scheduled and the temporary restraining order expired, the trial court issued the following preliminary injunction based upon the parties’ consent:
Springville Cemetery Association, Inc. is hereby enjoined and prohibited from (1) removing the canopy and arbor constructed by Petitioner in the Springville Cemetery in Coushatta, Louisiana, over the gravesite of his wife, Eleanor Holley Houston, and (2) moving to another location or removing the water hydrant presently located in the proximity of the gravesite of Eleanor Holley Houston.
A few days later, SCA answered Houston’s petition and reconvened. SCA alleged that under La. R.S. 8:204 it had the authority to make rules and regulations to prohibit the erection or installation of structures like the ones placed over and around the grave of appellant’s wife.
At the trial, three members of SCA’s board testified concerning the history of the cemetery and maintenance issues. Two other witnesses, a woman whose family plot was near Houston’s, and the person responsible for mowing and trimming the cemetery grounds, each testified.
SCA’s Chairman of the Board, Henry Bethard, testified that Springville Cemetery Association, Inc. was incorporated as a non-profit corporation in 1974. This coincided with the creation of the State Cemetery Board, under which SCA became licensed. Before its incorporation, Mr. Bethard had been involved with the association of interested persons governing the cemetery since 1952. He testified as follows concerning the evolution of rules promulgated by SCA:
A. The cemetery was there ... in the early 1800’s. Back then people used to put various things on their lots. We even had one where the little boy died and they put, this was before I came on, where they put a bird cage, a huge bird cage on his lslot, so his pet bird could be with him. Well, when I came to the cemetery around 1952 those things had begun to cause problems, because using mowers and what not the fences were such that it was practically impossible to keep the cemetery. So, we established rules at that time, I assume that was around 1950, sometime like that, in order to try to get the cemetery some kind of regulations so that the cemetery would be easier to keep....
The cemetery plot in question is described as “12-Grave plot of W.W. Holley in ‘Old Section’ of the Springville Cemetery.” Houston and his now-deceased wife, Eleanor Holley Houston, purchased perpetual care for the plot from SCA in 1999 for $1,500. The family plot measures about eighteen feet deep and thirty-two feet wide. Mrs. Houston’s parents, W.W. and Ela Holley, and a niece are buried in the family plot. Eleanor Houston died in November 2001. The disputed canopy-like structure covered three of these graves entirely. The testimony indicates that the tent blew down on prior occasions and that no other graves or plots had such structures.
At the conclusion of the trial, the matter was taken under advisement. The trial *907 court’s written ruling denied Houston’s petition for relief, ordered that the preliminary injunction be dissolved 45 days after the rendition of a signed judgment, and further ordered that “all of the structure (arbor and canopy) shall be removed no later than the foregoing forty-five day period.”
Houston now suspensively appeals. He presents the following three assignments of error based upon his assertion that SCA is a “quasi-governmental” body:
1. The district court erred by determining that the SCA is a private entity, and, therefore, not subject to the constitutional and statutory jurisprudence requiring established standards for the uniform exercise of its power, such as the power to grant or 14deny permission for the construction of structures such as Mr. Houston’s canopy and arbor.
2. The district court erred by not concluding that the decision of the Defendant’s Board of Directors to remove Mr. Houston’s arbor and canopy was an unconstitutional violation of equal protection due to a complete lack of standards.
3. The district court erred by not concluding that the decision of the Defendant’s Board of Directors to remove Mr. Houston’s arbor and canopy was per se arbitrary and capricious due to a complete lack of standards, and is therefore invalid.

Discussion

By Act No. 417 of 1974, the legislature amended and reenacted laws pertaining to cemeteries and created the Louisiana Cemetery Board. La. R.S. 8:1, et seq. (hereinafter “Title 8”). The Louisiana Cemetery Board regulates authorities engaged in the cemetery business, which may encompass the sale of a right of use for interment or charging fees for maintaining cemetery space. See, La. R.S. 8:67, 8:71, 8:74 and 8:78. As a part of the 1974 legislation, Section 201 of Title 8 was added to our law:
It is unlawful for any corporation, partnership, firm, trust, association, or individual to engage in or transact any of the businesses of a cemetery within this state except by means of a corporation authorized to operate a cemetery. Such corporation shall only engage in the cemetery business in this state if it has received a certificate of authority from the board pursuant to the provisions of Chapter 2 of this title.
La. R.S. 8:201.
Title 8 further addresses these cemetery associations as follows:
Section 202. Any private corporation authorized by its articles so to do may establish, maintain, manage, improve, or operate a cemetery, and conduct any or all of the businesses of a cemetery either for or without profit to its members or stockholders. A nonprofit corporation or a profit corporation may be organized in the manner provided in the general corporation laws of this state.
| ^Section 204. A cemetery authority may make, adopt, amend, add to, revise, repeal or modify, and enforce rules and regulations for the use, care, control, management, restriction and protection of all or any part of its cemetery, including without limitation the following:
(1) It may restrict and limit the use of all property within its cemetery;
(2) It may regulate the uniformity, class and kind of all markers, monuments and other structures within the cemetery and its subdivisions;
(3) It may regulate or prohibit the erection and/or installation of monuments, markers, effigies, structures and foundations within the cemetery;
*908 (4) It may regulate or prevent the introduction or care of plants or shrubs within the cemetery;
(5) It may prevent interment in any part of the cemetery of human remains not entitled to interment and prevent the use of interment spaces for purposes violative of its restrictions or rules and regulations;
(6) It may regulate the conduct of persons and prevent improper assemblages in the cemetery, and
(7) It may make and enforce rules and regulations for all other purposes deemed necessary by the cemetery authority for the proper conduct of the business of the cemetery, for the transfer of any interment space or the right of interment, and the protection and safeguarding of the premises, and the principles, plans, and ideals on which the cemetery is conducted.
SCA has asserted in defense its “ownership” of the cemetery. Houston’s arguments concerning the quasi-governmental nature of SCA’s incorporation do not assert that the nature of the land in question was public when burials began on the property. Under these circumstances, the Civil Code and the jurisprudence indicate and the record supports that Springville Cemetery is private property subject to the special public use involving cemeteries.
| ^Louisiana Civil Code Article 455 provides:
Private things may be subject to public use in accordance with law or by dedication.
The jurisprudence supports the view that land privately owned by individuals or entities other than the state or its political subdivisions may be conveyed, dedicated or allowed to be used for cemetery purposes. Humphreys v. Bennett Oil Corp., 195 La. 531, 197 So. 222 (1940); Vidrine v. Vidrine, 225 So.2d 691 (La.App. 3d Cir. 1969), writ denied, 227 So.2d 594 (La. 1969); Faust v. Mitchell Energy Corp., 437 So.2d 339 (La.App. 2d Cir.1983). This court in Faust, supra, observed that when such dedication occurs:
The precise nature of the right of the public or individuals or entities using and maintaining property for cemetery purposes is not clear. However, it is clear from the reported cases that such right, although a real right, is not ownership of the property but is more in the nature of a right of use or servitude or covenant running with the land.
437 So.2d at 342.
In Humphreys, supra, the underlying owner of the land and the church owning the right to use the land as a cemetery granted a mineral lease, and surprisingly, two oil and gas wells were drilled in the small cemetery. The heirs of persons buried on the property sued the mineral lessee in tort for “profanation of the entire cemetery.” Id. Finding the plaintiffs’ claims actionable, our supreme court ruled:
The one-acre plot of ground having been set apart for a cemetery and its use for that purpose having been accepted by these plaintiffs and many others, neither the fee owners nor the churches could later use, or empower another to use, it for any purpose inconsistent with the use for which it was dedicated.
_[¡¡Humphreys, supra, at 546, 197 So. 222. Similarly, jurisprudence recognizes the standing of a relative of a decedent buried in the cemetery to bring an action for trespass or encroachment upon the cemetery property. Locke v. Lester, 78 So.2d 14 (La.App. 2d Cir.1955); Vidrine, supra; Riverie v. Mills, 481 So.2d 1050 (La.App. 1st Cir.1985).
With this unique property regime for cemetery land, Title 8’s provisions specifically provide for private corporations that *909 own cemeteries and define their rights for cemetery maintenance and operations that are in keeping with the public use for cemeteries. La. C.C. art. 455. Section 202 expressly addresses the “private corporation” operating a cemetery which is governed by the “general corporation laws of this state.” La. R.S. 8:202. Section 204 then enumerates the special authority that such private corporations have over the “use, care, control, management, restriction and protection” of the cemetery as private property subject to public use. La. R.S. 8:204. In particular, SCA’s authority to “regulate the uniformity, class and kind of all markers, monuments and other structures within the cemetery” is recognized. La. R.S. 8:204(2).
From this view of our law for cemeteries, we reject Houston’s contention that SCA is not a private corporation. SCA’s actions in July and August of 2005 were taken in a reasonable manner with advance notice provided to Houston. The decision to require removal of the structures from the Houston family gravesite was not arbitrary and capricious since it represents action specifically enumerated under Title 8, compatible with both the public use and the Houston family use and enjoyment of the |scemetery. Houston’s special right in the property as a relative of those buried in Springville Cemetery was therefore subject to SCA’s maintenance authority and was not violated by its actions.

Conclusion

The trial court having determined that SCA acted within its authority, we affirm the ruling. Costs of appeal are assessed to appellant.
AFFIRMED.